IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LEON STAMBLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:08-cv-204 |
| | § | |
| JPMORGAN CHASE & CO., et al | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF'S OPPOSITION TO BOK FINANCIAL CORPORATION'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff Leon Stambler ("Stambler" or "Plaintiff") files this Opposition to BOK Financial Corporation's ("BOKF") Combined Motion and Memorandum Brief to Dismiss for Lack of Personal Jurisdiction as follows:

**SUMMARY OF RESPONSE**

BOKF's motion to dismiss and accompanying affidavit of BOKF's Chief Financial Officer, Steven E. Nell, do not survive minimal scrutiny. The thrust of BOKF's argument is that BOKF is merely a holding company that "does no business in the State of Texas." BOKF claims that (1) BOKF is not subject to specific personal jurisdiction in Texas because it "has no involvement whatsoever in the activities that the Plaintiff contends infringe upon his patent;" and (2) BOKF is not subject to general personal jurisdiction in Texas because BOKF does not have continuous and systematic contacts with this State. Publicly available information, including presentations given by Mr. Nell as recently as May 2008, tells a vastly different story.

Since 1996, BOKF has acquired at least eight Texas banks. (BOKF's "Investor Information" webpage, Exh. 18). BOKF announced the most recent acquisition in a March 2007 press release:

> BOK Financial Corp. (Nasdaq:BOKF) has entered into an agreement to acquire Texas-based Worth Bancorporation, Inc. The transaction has been approved by both the BOK Financial board of directors and the Worth Bancorporation (Worth) board of directors.
>
> …
>
> [BOK Financial Chief Executive Officer Stan Lybarger] said the planned acquisition is part of the company's strategy **to increase market share in the Dallas/Fort Worth Metroplex by growing its full-service banking presence**.
>
> "Fort Worth is a dynamic, fast growing market with strong demographics," Lybarger said. "Since entering the Texas market in 1997, we have grown steadily, and we are pleased to now offer additional banking convenience and expertise to our customers."
>
> **BOK Financial entered the Texas market in 1996 under the Bank of Texas brand. At the end of 2006, the bank had 38 branches, including 24 in the Dallas-Ft. Worth Metroplex and 14 locations in Houston**.

(Exh. 1, emphasis added). A May 2008 investor presentation by Mr. Nell increases the number of "BOKF Branches" in Texas to 48 with $3.4 billion in loans and $3.4 billion in deposits from Texas customers. (Excerpts from BOKF May 2008 investor presentation, Exh. 22, pp. 1, 5, 7, and 10). BOKF's "Investor Information" webpage boasts that "BOK Financial Corp." is the ninth largest the bank in the "Dallas-Fort Worth-Arlington" market and the fourteenth largest bank in "Houston-Sugar Land-Baytown" market. (Exh. 2). Thus, Mr. Nell's sworn assertion that "BOKF has not and does not hold itself out as conducting business in the State of Texas" is demonstrably false.

Likewise, BOKF's assertion that "BOKF has no involvement whatsoever" in the provision of the allegedly infringing services is simply not true. BOKF is specifically involved in online bill pay services offered through each of its banking subsidiaries' websites, including

2

www.bankoftexas.com. For each website, (1) BOKF is the registered domain name owner; (2) a BOKF employee is the identified technical consultant; and (3) the website's "IP location" is the same as BOKF's headquarters. (Networks Solutions' "Who is" search results, Exhs. 3-8). Moreover, the "Terms and Conditions" governing each website's "Online BillPay Services" directs the customer to contact BOKF regarding any questions or to terminate the online bill pay service. (Exhs. 9, 10, 12, 14, and 15, pp.2 and 4; Exh. 11, pp. 2 and 5; Exh. 13, pp. 2 and 4-5).

Stambler has sufficiently pleaded, and substantial evidence exists to demonstrate, that BOKF is subject to both general and specific personal jurisdiction in Texas. Thus, BOKF's motion to dismiss must be denied.[1]

**ARGUMENT**

I. **Contrary to the Nell Affidavit, BOKF's Has Extensive, Direct Contacts in Texas that Subject It to Personal Jurisdiction Here.**

    a. **Applicable Standard.**

General jurisdiction exists when the defendant's contacts are "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). Specific jurisdiction exists when the activities are purposefully directed at the forum and the litigation "arises out of or relates to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Here, BOKF's contacts with the State of Texas and this District satisfy both prongs of the personal jurisdiction inquiry.

Since the parties have not conducted jurisdictional discovery, Stambler needs only present sufficient facts to make out a *prima facie* case of jurisdiction. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003); *see also J-L Chieftan, Inc. v. Western Skyways, Inc.*, 351 F. Supp. 2d 587, 591 (E.D. Tex. 2004). And as the non-moving party,

---

[1] Alternatively, in the event the Court finds the present record insufficient to establish personal jurisdiction over BOKF, Plaintiff requests the opportunity to conduct jurisdictional discovery. See Section II, *infra*.

Stambler's uncontroverted allegations are to be accepted as true, and all facts contained in Stambler's supporting evidence are to be construed in the light most favorable to him. *See Silent Drive*, 326 F.3d at 1201; *J-L Chieftan*, 351 F. Supp. 2d at 591.

### b. General Jurisdiction Exists.

#### i. BOKF conducts business in Texas.

BOKF's Motion relies entirely on the affidavit of its Chief Financial Officer and Executive Vice-President, Steven E. Nell. Mr. Nell's affidavit simply cannot be taken at face value. Its central contention — that BOKF literally has no business activities whatsoever in Texas — is easily contradicted by publicly available information from BOKF, including BOKF's SEC filings, press releases, and Mr. Nell's presentations on behalf of BOKF.

Specifically, Mr. Nell's affidavit claims that "BOKF does no business in the State of Texas and is not qualified to do business in … Texas." (Nell Affidavit at ¶ 11). He further avers that "BOKF has not and does not hold itself out as conducting business in the State of Texas and has not intentionally or unintentionally promoted itself in television, radio or print advertising in the State of Texas." (Nell Affidavit at ¶ 14).

A May 2008 investor presentation by Mr. Nell, however, uses the following graphic on the third page:



(Exh. 22, p. 2). Mr. Nell's presentation goes on to state that Houston and Dallas/Fort Worth are "Markets Served" by BOKF and that BOKF has $3.4 billion in loans and $3.4 billion in deposits in Texas. (Exh. 22, pp. 8 and 10).

In addition, BOKF's 2007 10-K annual report, signed by Mr. Nell as BOKF's CFO on February 29, 2008, states that "BOK Financial[2] offers full service banking in … Dallas, Fort Worth …. " (Excerpts from BOKF 2007 SEC filing 10-K, Exh. 16, pp. 4-7).  BOKF's statements to the SEC are also consistent with a March 2007 press release by BOKF, highlighting BOKF's presence and ever increasing full-service banking market share in Texas. (Exh. 1).

BOKF's "Investor Relations" website states that "BOKF entered the regional markets with two small acquisitions in the Dallas area in 1997 and has grown average assets in Texas to over $4.3 billion …. In 2007, we added 16 branches in Fort Worth and the Denver area through acquisitions." (Exh. 17).  The website also lists "BOK Financial Corp." – not Bank of Texas N.A. – as the ninth largest bank in the "Dallas-Fort Worth-Arlington" market and the fourteenth largest bank in "Houston-Sugar Land-Baytown" market.  (Exh. 2).  In all, BOKF boasts 38 bank branches in Texas, and Mr. Nell elevated this number to 48 Texas branches in his May 2008 presentation.  (Exhs. 1 and 22, respectively).

### ii. BOKF appears to have employees or agents in Texas, and derives income from its Texas customers.

Mr. Nell asserts that "BOKF maintains no employees or agents in the State of Texas." (Nell Affidavit at ¶ 8)  Mr. Nell further asserts that "BOKF does not derive any revenue or income directly from the citizens of the State of Texas."  (Nell Affidavit at ¶ 10).

However, BOKF has completed eight significant acquisitions of Texas banks since 1996. (Exh. 18).  In a March 2007 press release, BOKF stated that "BOK Financial entered the Texas market in 1996 under the Bank of Texas brand. At the end of 2006, the bank had 38 branches, including 24 in the Dallas-Ft. Worth Metroplex and 14 locations in Houston."  (Exh. 1).  By end

---

[2] BOK Financial Corporation is defined as "BOK Financial" in its 2007 10-K.  This is the same entity that filed the Motion to Dismiss.

of 2007, BOKF had grown its operations to 48 "BOKF branches." (Exh. 22, p. 7). BOKF claims to be the ninth largest bank in the "Dallas-Fort Worth-Arlington" market and the fourteenth largest bank in "Houston-Sugar Land-Baytown" market. (Exh. 2). Mr. Nell's presentation also states that one-third of BOKF's loan growth and deposit growth is in Texas. (Exh. 22, p. 4). It is doubtful that BOKF could complete these significant acquisitions and run numerous bank branches in Texas without employees or agents in this state.[3]

### iii. BOKF furnishes banking services in Texas.

Mr. Nell claims that "BOKF's subsidiaries are the only entities that furnish banking, electronic fund transfer services…." (Nell Affidavit at ¶ 16). This averment does not square with BOKF's public statements.

For example, BOKF issued a press release in 2006 that states: "**BOK Financial** is a regional financial services company ***that provides commercial and consumer banking***, investment and trust services, mortgage origination and servicing, ***and an electronic funds transfer network***." (Exh. 19, emphasis added). Additionally, BOKF's "Investor Information" website states that "**BOKF has full-service banks located in eight states**. BOKF's broker/dealer subsidiary provides brokerage services in 10 states. BOKF's Bank of Oklahoma affiliate operates an electronic funds transfer network that spans 12 states." (Exh. 20, emphasis added). As indicated in BOKF's 2007 SEC filing 10-K, Texas is one of these eight states. (Exh. 16, pp. 2-5).

Thus, all of the above evidence is clearly at odds with Mr. Nell's sworn statement that "BOKF has not and does not hold itself out as conducting business in Texas." Instead, it affirms

---

[3] This evidence also contradicts Mr. Nell's claim that "BOKF does not now and has never owned or leased property, offices or facilities in the State of Texas. … BOKF makes no direct or indirect effort to solicit business of any kind or nature in the State of Texas." (Nell Affidavit at ¶¶ 7 and 17).

7

that BOKF has a continuous, systematic, and substantial presence in Texas such that its contacts subject BOKF to personal jurisdiction here.

    **c. Specific Jurisdiction Also Exists.**

        **i. BOKF is directly involved in the infringing activities at issue in this lawsuit.**

BOKF's motion to dismiss claims that "BOKF has no involvement whatsoever in the activities that the Plaintiff contends infringe upon his patent." BOKF cites Mr. Nell's sworn testimony that the "BOKF corporate website has no interactive feature except a link to its subsidiaries' website." (Nell Affidavit at ¶ 15).

Conveniently omitted from Mr. Nell's affidavit is the fact that BOKF is the registrant of its subsidiaries' online banking websites. For example, Bank of Texas, N.A. — a BOKF subsidiary — offers online bill pay services to its customers through the website www.bankoftexas.com, which lists BOKF as the registrant. (Exhs. 21 and 3, respectively). The same is true for each of BOKF's other banking subsidiaries' websites. (Exhs. 4-8). The technical consultant for each of these websites is a BOKF employee and the "IP location" is BOKF's headquarters. (Exhs. 3-8).

In addition, the "Terms and Conditions" webpage for Bank of Texas' online bill pay states that Bank of Texas customers must contact "BOK Financial BillPay Service, P.O. Box 2300, Tulsa, Oklahoma 74192" to discontinue bill pay service.[4] (Exh. 9, p. 4). The "Terms and Conditions" webpage also states that Bank of Texas' customers' questions should be directed to "BOK Financial Online Banking Service, P.O. Box 2300, Tulsa, OK 74192." (Exh. 9, p. 2). This Tulsa, Oklahoma address is the same address listed for BOKF's corporate headquarters. (Exh. 20). All of the above evidence is consistent with Mr. Nell's May 2008 presentation that

---

[4] Similarly, BOKF's other subsidiaries' online banking websites ask the customers to contact BOKF with any questions or to terminate service. (Exhs. 10-15).

states that BOKF's organization structure "gives us the benefit of local brands, while centralizing back office and control functions." (Exh. 22, p. 3).

BOKF has made numerous representations that it – not its Texas subsidiary – provides "full service banking" in Texas. (See Section I(b)(iii), above). These banking activities include the allegedly infringing online bill pay services. Thus, BOKF's public statements affirm that BOKF has purposefully directed its activities towards the State of Texas and these activities directly relate to the asserted cause of action.

### d. The Exercise of Personal Jurisdiction over BOKF Is Fair and Reasonable.

The exercise of personal jurisdiction over BOKF is fair and reasonable and BOK's arguments to the contrary are unavailing. If the Court finds purposeful minimum contacts, it should decline to exercise personal jurisdiction only if the defendant can show a "compelling case of unreasonableness." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568-69 (Fed Cir. 1994). "In general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id. See also Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).

In this case, exercise of personal jurisdiction over BOKF is entirely reasonable. BOKF has maintained a substantial presence in Texas since at least 1996 – the year BOKF made the first of its eight Texas acquisitions. (Exh. 18). BOKF claims billions of dollars of deposits in this state and likely earns millions of dollars of income from its Texas customers. (Exhs. 2 and 22). The law does not allow BOKF to avail itself of the privileges of conducting business in the

State of Texas, and then turn its back on Texas courts when it is hailed to account for its activities.

Nor is BOKF's assertion that Texas has no interest in this litigation persuasive. In *Beverly Hills Fan*, the forum state was Virginia, and the Federal Circuit held:

> "Virginia's interests in the dispute are significant. Virginia has an interest in discouraging injuries that occur within the state. . . . That interest extends to design patent infringement actions such as the one here. Virginia also has a substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiff's cause of action."

*Beverly Hills Fan*, 21 F.3d at 1568. BOKF is demonstrably involved in the infringing activities in this State. (See Section I(c)). Thus, Texas has an interest in this case and is a proper forum.

## II.  Alternatively, Plaintiff Requests Leave to Conduct Jurisdictional Discovery.

Plaintiff believes he has presented a sufficient record upon which the Court should find that it has personal jurisdiction over BOKF. At the very least, Plaintiff has presented a sufficient threshold showing so as to be entitled to take discovery on the personal jurisdiction issue. *See Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005). In the event the Court finds the present record insufficient, Plaintiff requests the opportunity to take jurisdictional discovery, including to depose Mr. Nell, request documents, and propound interrogatories regarding BOKF's contacts with the State of Texas.

**Dated: July 15, 2008**                                   Respectfully submitted,


/s/ Brent N. Bumgardner
Texas State Bar No. 00795272
Attorney-in-Charge
Edward R. Nelson, III
Texas State Bar No. 00797142
Edward E. Casto, Jr.
Texas State Bar No. 24044178
Christie B. Lindsey
Texas State Bar No. 24041918
NELSON BUMGARDNER CASTO, P.C.
5601 Bridge Street, Suite 300
Fort Worth, Texas 76112
(817) 377-9111
Fax (817) 377-3485
bbumgardner@nbclaw.net
enelson@nbclaw.net
ecasto@nbclaw.net
clindsey@nbclaw.net

Eric M. Albritton
Texas State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, TX  75606
(903) 757-8449
(903) 758-7397 (fax)
ema@emafirm.com

T. John Ward, Jr.
Texas State Bar No. 00794818
WARD & SMITH LAW FIRM
111 W. Tyler Street
Longview, Texas  75601
(903) 757-6400
(903) 757-2323 (fax)
jw@jwfirm.com

        Ronald A. Dubner
Texas State Bar No. 06149000
4965 Preston Park, Suite 560
Plano, Texas 75093
(972) 964-6500
(972) 964-6533 (fax)
rondub@gte.com

**ATTORNEYS FOR PLAINTIFF**
**LEON STAMBLER**

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July, 2008, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Brent N. Bumgardner