IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LEON STAMBLER | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-08-cv-204-DF-CE |
| | § | |
| JPMORGAN CHASE & CO., et al., | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

The Court held a *Markman* hearing on March 25, 2010. After considering the submissions

and the arguments of counsel, the Court issues the following order regarding claim construction:

### I.  Background of the Technology

Plaintiff Leon Stambler asserts United States Patent Nos. 5,793,302 ("the '302 patent") and

5,974,148 ("the '148 patent") (collectively, "Stambler patents") against remaining Defendants

Compass Bancshares, Inc., Compass Bank, First Horizon National Corporation, and First

Tennessee Bank National Association (collectively, "Defendants"). The Stambler patents have a

common specification and claim priority to November 17, 1992. Plaintiff asserts claims 7, 41,

43, 46, 47, 48, and 53 of the '302 patent and claims 28, 34, and 35 of the '148 patent. The

Stambler patents are entitled "Method for Securing Information Relevant to a Transaction" and

teach improvements to conducting financial transactions thereby minimizing fraud on the parties.

The patents address two types of fraud that can occur in multi-party transactions, especially

electronic transactions. First, the patents disclose a system for authenticating that information

relating to the financial transaction has not been fraudulently authored, such as the amount on a

check. Second, the patents teach authenticating the parties to a transaction. For example, the

transaction system of the patents would detect when a person cashing a check is not the intended

recipient.

The invention uses what is called a "variable authentication number (VAN)" to authenticate the transaction information as well as the parties. A VAN (a disputed term), as disclosed in the embodiment, contains an encoded key that contains information about at least one of the parties and at least some of the transaction information. This encoded key is called a joint key. The joint key might, for example, contain the intended recipient's tax identification number, the check amount, and the payor's identifying information. When an endorsed check is presented at the recipient's bank, the recipient's bank first verifies whether the party presenting the check is in fact the intended recipient. After verifying that the recipient is authentic, the recipient's bank requests that the payor's bank transfer the funds in accordance with the check's instructions. The payor's bank will then verify whether the document has been altered based upon the document information encoded into the joint key. Additionally, the payor's bank will be able to verify whether the payor did in fact originate this check based upon the payor information encoded into the joint key. According to the embodiment, only selected parties would be able to decode the VAN to access the joint key, thereby making it nearly impossible for the VAN to be fraudulently created or modified.

Plaintiff previously pursued claims under the asserted patents before the District of Delaware in 2001. *See Stambler v. RSA Sec. Inc.*, No. 01-65-SLR (D. Del.). The Delaware court issued its claim construction order in 2003. A number of the terms that the Delaware court construed are at issue in this litigation: VAN; secret key of the first party/payor/originator; instrument; previously issued; and credential. Defendants argue that Plaintiff should be estopped from pursuing constructions that are different than those it pursued in the Delaware court when the Delaware court adopted Plaintiff's proposal. Plaintiff argues that the constructions in the

Delaware court are based upon dictionary definitions almost exclusively and that *Phillips* is intervening law regarding claim construction.

## II.    General Principles Governing Claim Construction

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. A patent's claims must be read in view of the specification, of which they are a part. *Id*. For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id*. "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim

language is broader than the embodiments.  *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  In *Phillips*, the court set forth several guideposts that courts should follow when construing claims.  In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude."  415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To that end, the words used in a claim are generally given their ordinary and customary meaning.  *Id*.  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id*. at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention.  The patent is addressed to and intended to be read by others skilled in the particular art.  *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id*.  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id*. at 1315 (*quoting Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id*. at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive

portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id*. Nevertheless, the prosecution history is intrinsic evidence. That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Id*. at

1319-24. The approach suggested by *Texas Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id.* at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of the claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.* What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id.* The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id.* at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

## III. Agreed Terms

The parties have agreed to definitions of the following terms:

| Term | Claim number | Agreed Construction |
|---|---|---|
| "coding" | '302, claim 7; '148, claim 35 | Transforming information by applying a known algorithm |
| "credential information" | '302, claims 47, 53 | Information stored or contained in a credential |
| "determining | '302, claim 53 | Determining whether the at least a portion of the received funds |

| | | |
|---|---|---|
| whether the at least a portion of the received funds transfer information is authentic by using the VAN and the credential information" | | transfer information is unchanged by using the VAN and the credential information |
| "payment" | '302, claims 43, 53; '148, claim 28, 35 | Compensation in exchange for goods or services or the discharge of a debt |
| "payer/payor" | '148, claim 28 | Plain meaning. The parties agree that the terms "payer" and "payor" refer to the same entity. |
| "creating an error detection code (EDC1) by coding" | '148, claim 35 | Creating an error detection code (EDC1) by applying an algorithm to information in such a manner as to permit the detection of changes without complete recovery of the original information. |
| "Error detection code or EDC" | '148, claim 35; '302, claim 46 | The result of applying an algorithm to information in such a manner as to permit detection of changes but without complete recovery of the original information |
| "VAN being usable to determine the authenticity of the one or more pieces of payment information" | '148, claim 35 | The VAN being usable to determine that the one or more pieces of payment information has not changed |

Joint Claim Construction and Prehearing Statement at 1–2. [Dkt. No. 356]

## IV.    Disputed Terms

### A.    "a third party for determining"

| Term | Plaintiff's Defintion | Defendants' Definition |
|---|---|---|
| "a ***third party for determining*** whether the at least a portion of the received funds transfer information is authentic by using the VAN" | A party or system that performs the determining step of the claim. | A party different from the party performing the other steps of the claim, for determining. |

This term appears in claim 41 of the '302 patent.  The parties dispute whether the "third party" is permitted to perform any of the other steps enumerated in Claim 41.  Claim 41 is a method with four steps:

41. A method for authenticating the transfer of funds from a first account associated with a first party to a second account associated with a second party . . . the method comprising:

*receiving* funds transfer information from the first party, including at least information for identifying the first account of the first party, and information for identifying the second account of the second party, and a transfer amount;

*generating* a variable authentication number (VAN) using at least a portion of the received funds transfer information;

a third party for *determining* whether the at least a portion of the received funds transfer information is authentic by using the VAN; and

*transferring* the funds from the first account of the first party to the second account of the second party if the at least a portion of the received funds transfer information and the VAN are determined to be authentic.

Both parties agree that the third party must perform the "determining" step. Plaintiff argues that the plain language of the claim does not prohibit the third party from performing any of the other three steps. As none of the other three steps recite an actor, Plaintiff argues that the language of the claim indicates that the inventor did not intend to restrict those steps to (or from) particular parties. According to Plaintiff, a third party could receive the funds transfer information and use that to generate a VAN.

Plaintiff further argues that Defendant's construction would read out a disclosed embodiment. In the "paperless/cashless transaction system," the transaction system is a terminal belonging to the payment recipient, or "second party" as recited in this claim. '302 patent, 24:5–10. The terminal receives funds transfer information from the payment originator, or "first party" in this claim, generates a VAN, and authenticates the payment originator using the VAN. '302 patent, 14:10–20. Plaintiff argues that the transaction system is the third party of Claim 41, and performs the "receiving," "generating," and "determining" steps.

Finally, Plaintiff argues that the prosecution history supports its construction. When the

inventor amended Claim 41, the inventor told the examiner, "In this scheme, the payment originator is a first party, the recipient is a second party, and the system which approves or disapproves the payment is a third party. The use of a third party to authenticate a van and transfer of funds is recited in claim [41]." Plaintiff's Brief, Ex. D at 55. This, according to Plaintiff, shows that the third party performs the "determining" step and the "transferring" step.[1]

Defendants argue that in the context of Claim 41, the inventor chose to specify the "third party" to differentiate the party that performs the determining step from the party performing the other steps. According to Defendant, a party, which is neither the first nor third parties, receives "funds transfer information" from the payment originator, generates a VAN, and "informs the first party's bank to transfer the funds." Def. Brief at 21. Defendants also argue that it would make no sense to have the same party that receives the funds transfer information and then generates the VAN be the party to authenticate the VAN it just created.

Defendants also rely on the prosecution history, wherein the inventor added the term "third party" by amendment. According to Defendants, "If a 'third party' is the same party performing the other steps of the claim, the recitation of a 'third party' in the claim would not have been necessary." Def. Brief at 22. Defendants also disagree with Plaintiff's reading of the office action response in which the amendment appears. Defendants argue that the sentence, "The use of a third party to authenticate a VAN and transfer and transfer of funds is recited in claim [41]," should be read to mean the third party authenticates a VAN and, thereby, authenticates a transfer of funds.

With respect to the embodiments, Defendants argue that Plaintiff's arguments are misleading. Defendants say that the "system" recited in the prosecution history is not the same

---

[1] Plaintiff inserted [sic] following "transfer of funds" to suggest the erroneous insertion of the word "of" by the inventor during prosecution of the patent. Pl. Brief at 9.

"paperless/cashless transaction system" described at the end of the preferred embodiment. *See* '302 patent, 24:14–24. *See also* Pl. Br., Ex. D at 55 ("the system which approves or disapproves the payment is a third party"). Defendants attempt to refute Plaintiff's argument that Defendant's construction does not read on the paperless/cashless embodiment by arguing that Claim 41 is not intended to read upon that particular embodiment.

Plaintiff argues that it is "black letter law" that the construed claims must read on all of the preferred embodiments. Pl. Reply at 4. Here, however, is a case where the embodiments are so varied that a single claim is not expected to read upon all of them. *See* '302 patent, 6:12–45 (describing two authenticating parties, one of which does not and cannot generate a VAN: authenticating transfer information at the originator's bank with a VAN; authenticating the recipient at the recipient's bank without using a VAN). *See also id* at 24:5–24 (describing a system where the recipient is never authenticated).

Defendant's argument is not without force. A construction that allows the party that generates a VAN to turn around and authenticate that very VAN would be nonsensical. As urged at oral argument, however, the same party might authenticate the VAN it had previously created when the payee presents the check at the issuing financial institution for payment. Inartfully drafted though the claim may be, using Defendant's proposed construction would require four parties, which is not mandated by the claim language, specification, or prosecution history. If the third party is not permitted to perform any of the other steps, then it becomes clear that some additional party or parties must perform the receiving and generating steps. The Court rejects this view of the claim and construes this limitation to mean, "a party, other than the first or second parties, that performs the determining step of the claim."

**B. "variable authentication number (VAN)"**

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "generating a *variable authentication number (VAN)* using at least a portion of the received funds transfer information" '302 patent, claim 41<br><br>"the payer creating a *variable authentication number (VAN)* on a computer using at least a portion of the document information, and a secret key of the payor" '148 patent, claim 28<br><br>"using a computer to create a *variable authentication number (VAN)*, the VAN being created using at least a secret key of the first party" '148 patent, claim 34 | A variable number that can be used in verifying the identity of a party or the integrity of information or both, the number generated by coding information relevant to a transaction, document (paper, electronic, or otherwise), or thing with either a joint key or information associated with or related to at least one party involved in the transaction or issuance of the document or thing. | A variable number that can be used in verifying the identity of a party or the integrity of information or both. |

This term appears in the '302 patent, claim 41 and the '148 patent, claims 28, 34, and 35. The parties dispute whether Plaintiff is collaterally estopped from arguing a different construction than what it previously proposed and that a Delaware court adopted, and whether a variable authentication number (VAN) must be created in a certain way. Defendants propose the District of Delaware's construction.

Plaintiff argues that the Delaware court's construction is of little value because, even though the patentee acted as his own lexicographer, the court's construction "was based entirely on dictionary definitions of the words 'variable,' 'authentication,' and 'number.'" Plaintiff's Brief at 11. After *Phillips*, according the Plaintiff, Courts are to defer to the patentee when he defines the terms that appear in the claims.

Plaintiff argues that the patentee acted as his own lexicographer when he wrote in the summary of the invention:

> In accordance with an embodiment of the present invention, when a
> transaction, document or thing needs to be authenticated, information

> associated with at least one of the parties involved (e.g., an originator
> and/or a recipient) is coded to produce a joint code. This joint code is then
> utilized to code information relevant to the transaction, document or
> record, in order to produce a variable authentication number (VAN) or
> code at the initiation of the transaction.

'302 patent, 2:9–17. Plaintiff argues that VAN is further defined in one of the embodiments: "Note that the VAN is alternatively generated directly from INFO and information associated with at least one of the parties, without the intermediate step of generating the JK." '302 patent, 5:9–25. According to Plaintiff, because "every description and embodiment from the specification" shows the VAN "created by coding information associated with or related to a transaction or credential with either a joint key or 'information associated with at least one of the parties, without the intermediate step of generating the [joint key].'" Plaintiffs Brief at 13 (quoting '302 patent, 5:24–25).

Defendants argue that Plaintiff is collaterally estopped from arguing a different definition in this case and that *Philips* is not intervening law. To prevail on the theory of collateral estoppel, a party must show the following: "(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994); *see also U.S. v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994) (setting forth a similar test). Defendant argues that only the third element is disputed and that the third element is satisfied because the jury in the Delaware court returned a verdict of non-infringement. Defendants also argue that *Phillips* does not represent a change in law but, rather, is a clarification of then-existing law. Defendant's Brief at 14.

Should the Court reject Defendant's collateral estoppel argument, the Defendants alternately argue that defining a VAN by the manner in which is generated is unnecessarily

importing a limitation from the preferred embodiment. Defendants point out that "each of the claims in which VAN appears specifically includes a limitation dictating precisely how the VAN in that particular claim must be generated." Def. Brief at 15. Both parties agree that the manner in which a VAN is used is necessary to the definition and is consistent in all of the claims, Defendants argue, however, that the VAN is not created the same way in each of claims and to include it in the definition would be superfluous in many of the claims.

Plaintiff's argument that Claim 41, for example, does not tell a person of ordinary skill in the art that the VAN is generated from information relevant to a transaction is not persuasive. The very text of Claim 41 recites, "generating a variable authentication number (VAN) using at least a portion of the received funds transfer information." Funds transfer information, likewise, is described within Claim 41 as "including at least information for identifying the first account of the first party, and information for identifying the second account of the second party, and a transfer amount." Furthermore, the Corut does not agree that the patentee acted as his own lexicographer in the passages that Plaintiff cites.

Absent a showing that a previous construction is incorrect, the Court will not alter a prior court's claim construction. Moreover, where, as here, the Plaintiff obtains the constructions that he advanced previously, the Court is not easily persuaded to depart from those prior constructions. Central to the invention, however, is that the VAN represents an unalterable truth—thereby thwarting fraud. In order to prevent the manipulation or alteration of the VAN, it is encoded and only decodable by selected, trusted parties. The Delaware court's construction does not reflect that the VAN has been encoded. The Court slightly modifies the Delaware construction to read, "an encoded variable number that can be used in verifying the identity of a party or the integrity of information or both."

## C. "secret key of the first party/payor/originator"

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "the payer creating a variable authentication number (VAN) on a computer using at least a portion of the document information, and *a secret key of the payor*" '148 patent, Claim 28.<br><br>"creating the VAN on a computer by coding the EDC1 using a *secret key of the originator*" '148 patent, Claim 35. | A private key that is created by the payor, or an entity originating an instrument on the payor's behalf, by coding information associated with or related to the payor, which is capable of being separately created by a party intended to authenticate the instrument. | A key that is known only to the payor and those intended to know it and that exists beyond the duration of a particular transaction. |

This term, found in claims 28, 34, and 35 of the '148 patent, does not appear in the specification. The parties dispute whether the disputed term refers to the "PIN" or the "joint key" of the specification. The Delaware court construed this claim term, adopting plaintiff's proposal in the previous litigation. Defendants propose the Delaware Court's construction.

Plaintiff argues that the "secret key" refers to the "joint key" because Claim 34 recites, "[a] VAN being created using at least a secret key of the first party." According the Plaintiff, only the joint key (or joint code) is used to create the VAN. *See* '302 patent, 5:13–15. Plaintiff argues that the secret key cannot be the PIN because the authenticating party must recreate or uncover the secret key, which cannot be done with a PIN.

Concluding that the secret key is the joint key, Plaintiff goes on to define "joint key." Plaintiff determines that a joint key is "created by coding 'information associated with at least one of the parties involved in the transaction (in this case, the originator and recipient).'" Pl. Brief at 15. Plaintiff further explains that the key is secret because "only the first party/originator can initially create and use a particular joint key because only the first party/payor/originator can provide the secret PIN that is used to create a joint key." Pl. Brief at 16.

Defendants argue that the "secret key" is the PIN because, of all the pieces of data used to create a VAN, "[t]he only thing in that process that the patent describes as 'secret' and 'of a party' is the originator's PIN." Def. Brief at 24. Defendants argue that the secret key cannot be a joint key because 'the joint key can be created by someone other than the party to whom it belongs and is not a 'secret key of a party.'" *See* Def. Brief at 24.

Defendants also argue that the secret key must exist beyond the duration of a transaction. According to Defendant, "[t]he PIN exists before a transaction, during enrollment, and after a transaction, so that the PIN remains associated with the first party and can be used to authenticate that party." Def. Brief at 25. The bank, so it follows, must have a relatively static reference point in order to perform a meaningful authentication.

Contrary to Plaintiff's interpretation, the Court is of the opinion that the PIN is indeed used to create a VAN, as described in the '302 patent, Column 5, Lines 3–18. Notably, "the originator's PIN is converted to a coded PIN (CPNO), which is applied as the key input to coder 28." '302 patent, 5:5–6. The coded PIN is then used to code the payment recipient's information into the joint key. Furthermore, it is the coded PIN that is used to authenticate the originator of an instrument, which means it is known by those intended to know. Finally, Plaintiff's argument that the VAN cannot be created without the joint key applies equally as well to the coded PIN. The Court finds no error and adopts the Delware court's construction. This term means "a key that is known only to the payor and those intended to know it."

### D. "the VAN being used for attesting to the authenticity of the payor and document information"

| Term | Plaintiff's Definition | Defendants' Definition |
|------|------------------------|------------------------|
| "the payer creating a variable authentication number (VAN) on a computer using at least a portion of the document information, and a secret key of the payor, the document information including an amount, and information for identifying the payee, *the VAN being used for attesting to the authenticity of the payor and document information*" | The VAN being used to evidence that the instrument originated from the payor and that the at least a portion of the document information used to create the VAN has not changed. | The VAN is used to verify the identity of the payor. In addition, the VAN is used to verify that the document information has not changed. |

The disputed phrase appears in claim 28 of the '148 patent. First, the parties dispute whether "attesting" means that the VAN "verifies" or "evidences." Second, the parties dispute whether "attesting to the authenticity of a payor" requires confirming the identity of the payor or merely that the document originated with the payor.

Plaintiff argues that the invention only gives indications of authenticity and does not exactly "verify" authenticity. Pl. Brief at 18. According the Plaintiff, the invention authenticates that the instrument is not forged and did in fact originate with the payor. The plaintiff also argues that "[i]t is axiomatic that the VAN verifies only the portion of the 'document information' that was used to create it." Pl. Brief at 19. Therefore, as the VAN is only created using "at least a portion of the document information," the VAN can only attest to that portion of the document information.

With respect to the authenticity of the payor, Plaintiff argues that the VAN does not confirm the originator's identity. Rather, according to Plaintiff, "the VAN in the funds transfer embodiments is used to confirm that the payor originated, or authorized, the funds transfer

instructions."  Pl. Brief at 19.  Under Plaintiff's construction, the "information extracted from the VAN" needs only match "the information included on the payment instrument."  *Id.*  Defendants argue that Plaintiff's proposal is inconsistent with the definition for VAN and inconsistent with the specification.

Defendants also argue that the invention confirms identities of parties, so the VAN must be used to confirm the identity of the payor in claim 28.  *See* Def. Brief at 16–17.  Defendants point to the "numerous references to [the invention's] authentication process involving a verification of a party identity."

The Court construed VAN such that it "can be used in *verifying* the identity of a party or the integrity of information or both."  Furthermore, as Defendants point out, the specification repeatedly uses the word "verify" and never uses the word "evidences."  The Court is of the opinion that the VAN gives more than just an "indication."  Moreover, while an accurate VAN may be only an indicator that a document is not forged, the claim does not require that the VAN verify the document.  Rather, the VAN verifies—not merely indicates—that at least some document information is unchanged and that the payor is authentic.

The Court does not agree that payor authenticity is the same thing as identity verification.  The specification does indeed recite that the originator's bank verifies the originator's identification, but this is not in connection with a VAN.  The bank authenticates the identity of the party at *enrollment*, not as part of a transaction.  The party's identity is presumed to be authentic through the use of the secret PIN, but that identity need not be verified as part of the transaction.  The VAN merely confirms that the account holder originated the instrument.  The VAN does not confirm that the account holder is who he says that he is.  The Court construes the disputed phrase to mean: "The VAN being used to verify that the instrument originated from the

payor and that the at least a portion of the document information used to create the VAN has not changed."

### E. "VAN . . . attesting to the authenticity of the instrument"

| Term | Plaintiff's Definition | Defendants' Definition |
|------|------------------------|------------------------|
| "including the VAN with the instrument for subsequent use in attesting to the authenticity of the instrument" | The VAN evidencing that the instrument has not changed. | The VAN verifies that the information in the instrument as a whole has not changed and verifies the identity of the party who created the instrument. |

This phrase appears in claim 34 of the '148 patent. The parties again dispute whether the VAN "evidences" or "verifies" authenticity, and whether "authenticity of the instrument" requires verifying the identity of the payor as well as confirming that the instrument has not changed. As discussed above, verifies is the appropriate verb.

Plaintiff argues that this claim requires only that the instrument has not changed and that it does not need to verify the identity of the party. Plaintiff relies upon claim differentiation to explain that the originating party is not required to be authenticated in all claims. Defendants argue that an instrument is authentic if the information has not changed *and* the payor authorized the payment. Defendants further argue that the "instrument as a whole" must be authentic because, "[a]n instrument cannot be authentic . . . if any aspect of the instrument has changed." Def. Brief at 19.

The Court is of the opinion that an instrument is authentic if it has not been forged. As discussed above, there are two types of forgery: creating an unauthorized check and altering an otherwise authorized check. If the instrument is created fraudulently, even if there are no changes to it, it would not be an authentic instrument. The claim requires authenticating the instrument, not merely the transfer information, as in Claim 28. Therefore, authentication should include verifying on some level that it is an authorized instrument. Plaintiff need not be

concerned that using the word "verifies" would impose greater authenticity restrictions on the claim. The claim recites "for subsequent use in attesting," which only requires that it be helpful to attesting to authenticity. Therefore, the Court construes the phrase to mean "including the VAN with the instrument for subsequent use in verifying that the information in the instrument has not changed and verifying that the instrument originated from the first party."

### F. "if the at least a portion of the received funds transfer information and the VAN are determined to be authentic"

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "a third party for determining whether the at least a portion of the received funds transfer information is authentic by using the VAN; and transferring funds from the first account of the first party to the second account of the second party *if the at least a portion of the received funds transfer information and the VAN are determined to be authentic.*" | If the at least a portion of the received funds transfer information and the VAN are verified or determined to be unchanged. | (1) A verification that the received funds transfer information has not changed or is unaltered; and (2) verifying the identity of the first party. |

This limitation appears in claim 41. Continuing with the authentication disputes, the parties dispute whether this limitation requires verifying the identity of the first party. Plaintiff argues that requiring verification of a party's identity would import a limitation from the specification. Defendants argue that the language "and the VAN" means nothing in this claim if it does not authenticate the party. The Court has construed VAN such that it is "used in verifying the identity of a party or the integrity of information or both." The claim already recites authenticating the funds transfer information that is included within the VAN. If, in this claim, the first party is not required to be authenticated, this claim would disclose authenticating the funds transfer information twice. Defendants argue that authenticating the VAN means that the identity of the first party is authenticated.

Plaintiff's argument is convincing. The Court agrees that this claim does not require *party*

authentication.  Verifying that the VAN is unchanged, however, as Plaintiff proposes, does little

if the VAN was created fraudulently.  By requiring the VAN to be authentic, this limitation

requires the VAN to represent what it purports to represent.  The Court construes this limitation

to mean, "if the at least a portion of the received funds transfer information is unchanged and the

VAN is not fraudulent."

### G.  "instrument" and "payment instrument"

| Term | Plaintiff's Definition | Defendants' Definition |
| --- | --- | --- |
| "an originator party creating an ***instrument*** for transferring funds to a recipient party, the instrument information comprising (i) a variable authentication number (VAN), and (ii) one or more pieces of payment information including an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number" '148, Claim 35. | Instrument: document (including paper or electronic) that is used to transfer funds to a recipient party<br><br>Payment instrument:  a document (including paper or electronic) that is used to transfer funds to a recipient party in connection with a payment. | A document, that is an instrument of commerce, used to transfer funds to a recipient party |

This term appears in claims 34 and 35 of the '148 patent.  The parties' essential dispute is

whether the instrument can be mere instructions to pay the recipient party or whether the

instrument must be commercial paper.  Plaintiff argues that the specification is not limited to

checks, but can include a set of instructions.  Defendants argue that Plaintiff's proposal is

overbroad.  Defendants believe that the scope of the invention is limited to negotiable

instruments.

The specification's inclusion of a cashless system indicates electronic instructions are

within the scope of the invention.  The Court adopts Plaintiff's construction.

## H. "credential"

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "coding the first information using second information and then coding the result using third information, at least one of the second and third information being associated with at least one entity, the entity comprising a person or a computer program, wherein a ***credential*** having non-secret information stored therein is previously issued to at least one entity by a trusted entity, the non-secret information including the second or third information." | A non-secret document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party. | A document or information obtained from a trusted source that is transferred or presented to establish the identity of a party. |

This term appears in claims 7, 47, and 53 of the '302 patent. The parties primarily dispute whether a credential must conclusively establish the identity of a party and whether it must be non-secret. Defendants offer the Delaware court's construction of this term.

Plaintiff argues that a credential need not conclusively establish the identity of a party. A credential is only *used* to establish a party's identity. Pl. Brief at 26. "[A] credential is presented as evidence or proof of identity, and the receiving party or system uses the credential for that purpose." *Id.* Plaintiff also argues that the credential must be non-secret because it must be "publicly presented for purposes of identifying a party." A credential, according to Plaintiff, cannot be a password.

In addition to making collateral estoppel arguments, Defendants argue that a credential is not merely *used* to authenticate a party but does authenticate a party. Def. Brief at 31. Defendants point to the specification, which states, "As part of the credential authentication process, the identity of the user is authenticated." '302 patent, 12:27–40. Defendants also argue

that Plaintiff's proposal would make a credential overbroad and would read on a business card. Def. Brief at 32. If the credential were only required to be presented for purposes of determining the identity of a party, according to Defendant a business card would serve as a credential.

Both parties agree that part of the definition of credential includes a requirement that it come from a "trusted source." A mere business card, without more, would not serve as a credential under either proposal. Also, as used in the patent, a credential is intended to be a document or information presented to another for review. As such, it would make sense that the credential cannot be secret. Nonetheless, in the '302 patent, Claim 7, the inventor specifies that the credential has non-secret information. If the Court construes credential to be a non-secret document, this limitation would be meaningless. The Court is therefore of the opinion that "non-secret" should not be part of the definition of credential.

The Court now turns to the issue of whether a credential "establishes" identity. Although a driver's license or a passport is often used to establish identity, social security cards and birth certificates cannot by themselves establish the identity of the bearer. Yet the patent refers to a social security card as a credential. *See* '302 patent, 8:54–58. This is one of those instances in which the interests of comity yield to this Court's view of its independent obligation to give the correct meaning to claim terms. The Court construes the term to mean, "a document or information obtained from a trusted source that is transferred or presented for purposes of determining the identity of a party."

## I. "information for identifying the first/second account of the first/second party"

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "receiving funds transfer information from the first party, including at least **information for identifying the first account of the first party**, and **information for identifying the second account of the second party**, and a transfer amount" | Plain meaning; alternatively, information that is used to identify an account of the first/second party | Information sufficient to uniquely identify a specific account of the first/second party. |

These phrases appear in claim 41 of the '302 patent. The parties dispute whether the information must "uniquely" identify a specific account. Claim 41 is reproduced below, with the relevant portions emphasized:

> 41. A method for authenticating the transfer of funds from a first account associated with a first party to a second account associated with a second party . . . the method comprising:
>
> receiving funds transfer information from the first party, including at least *information for identifying the first account of the first party*, and *information for identifying the second account of the second party*, and a transfer amount;
>
> generating a variable authentication number (VAN) using at least a portion of the received funds transfer information;
>
> a third party for determining whether the at least a portion of the received funds transfer information is authentic by using the VAN; and
>
> *transferring the funds from the first account of the first party to the second account of the second party* if the at least a portion of the received funds transfer information and the VAN are determined to be authentic.

Plaintiff argues that the inventor chose to claim the invention broadly such that account numbers or other unique identifiers are not required. Plaintiff also argues that Defendants' construction excludes the preferred embodiment. In the preferred embodiment, the recipient's bank identifies the recipient's bank account information using the recipient's TIN, which does

not necessarily uniquely identify a specific account. *See* '302 patent, 6:22–30.

Defendants argue that in order to transfer funds from one account to another, as performed in the fourth limitation, information is required to sufficiently identify the originating and target accounts. Relying on claim differentiation, Defendants argue that the inventor chose to specify account identification as opposed to party identification. Where a party has multiple accounts at a single institution, absent specific information, this claim would fail because the transfer would fail.

As Plaintiff points out in his reply, the inventor does not need to "delineate all aspects of a functional, working system." Pl. Reply at 12 (citing *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1303 (Fed. Cir. 1999)). The text of this claim does not require specific account identification. Moreover, the information required need only be "***for*** identifying," not "***that*** identifies." The Court construes the term to mean, "information that is used to identify an account of the first/second party."

### J. "previously issued"

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "the entity comprising a person or a computer program, wherein a credential having non-secret information stored therein is previously issued to at least one entity by a trusted entity" '302, Claim 7.<br><br>"The method of claim 41 for further securing the transfer of funds, at least one party being previously issued a credential by a trusted party, the credential information including information associated with the at least one party" '302, Claim 47. | "issued before the execution of the steps recited in the claim" | Claim 7: wherein a credential having non-secret information stored therein is previously issued to at least one entity by a trusted entity" is a required step of the claim which occurs prior to "coding the information using second information."<br>Claim 41: "at least one party being previously issued a credential by a trusted party" is a required step of the claim that occurs before the other steps recited in the claim.<br>Claim 53: the credential referenced in the claim must already be issued before the execution of the steps of the |

| | | claim. |
|---|---|---|

The phrase "previously issued" appears in claims 7, 47, and 53 of the '302 patent. The parties dispute whether "previously issued," with respect to credentials, denotes a separate step. The parties do not dispute that "previously issued" is not a separate step in Claim 53. The Delaware court construed a related term, "wherein a credential is previously issued," to mean, "the credential referenced in the claim must already be issued before the execution of the steps of the claim." Claims 7 and 47 are reproduced below:

> 7. A method for coding first information, the method comprising:
>
> coding the first information using second information and then coding the result using third information, at least one of the second and third information being associated with at least one entity, the entity comprising a person or a computer program, wherein a credential having non-secret information stored therein is previously issued to at least one entity by a trusted entity, the non-secret information including the second or third information.
>
> 47. The method of claim 41 for further securing the transfer of funds, at least one party being previously issued a credential by a trusted party, the credential information including information associated with the at least one party, and a second variable authentication number (VAN1), the VAN1 being used to secure at least a portion of the credential information to the at least one party, authentication and the transfer of funds being denied to the at least one party if the at least a portion of the credential information cannot be secured to the at least one party by using the VAN1.

Plaintiff argues that, as used in claim 7, "previously issued" is a condition and not a step. In claim 7, the steps are denoted by present participles, according to Plaintiff, whereas "previously issued" is in past tense. In Claim 47, the steps are offset by semicolons and "previously issued" is not offset by a semicolon. Moreover, Plaintiff argues that Stambler's claims follow the MPEP convention of indenting each step of the claim. *See* MPEP § 608.01 (j) (7th Ed. 1997)("Where a claim sets forth a plurality of elements or steps, each element or step of the claim should be separated by a line indentation.").

Defendants argue that, unlike in the Delaware court's construction, "previously issued" in Claims 7 and 47 appear in the body of the claim and are separate steps to be performed in the method. Defendants urge that the inventor could have drafted the claims more clearly if he did not intend "previously issued" to be a separate step.

In claim 7, there are two steps, "coding the first information and then coding the second information." The remainder of the claim merely describes in detail what is being coded. Claim 47, likewise, adds context to the method of claim 41. Claim 47 specifies additional characteristics of the elements of claim 41 and does not add any additional steps to claim 41. The Court adopts Plaintiff's construction.

### K. "the adequacy of the funds in the first party's account being verified after the instrument is issued"

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "a first party creating an instrument for transferring funds to a second party, *the adequacy of the funds in the first party's account being verified after the instrument is issued*;" | The instrument being created before verifying whether an account of the first party has adequate funds or credit to cover or pay the instrument | after the instrument is released, determining whether or not the first party has sufficient funds in his/her account to pay the amount listed on the instrument |

This phrase appears in claim 34 of the '148 patent. The parties dispute whether this phrase is a separate step of claim 34. Claim 34 is reproduced below:

34. A funds transfer method comprising:

   a first party creating an instrument for transferring funds to a second party, *the adequacy of the funds in the first party's account being verified after the instrument is issued*;

   using a computer to create a variable authentication number (VAN), the VAN being created using at least a secret key of the first party; and

   including the VAN with the instrument for subsequent use in attesting to the authenticity of the instrument.

Plaintiff argues that the disputed phrase merely limits the "creating" step of claim 34.

Plaintiff again explains that the steps of claim 34 are all recited in present participles and offset by semicolons.

Defendants argue that the phrase is a separate step. First, Defendants say that "[t]here is nothing to indicate that the disputed phrase modifies the 'creating an instrument' step." Def. Brief at 27. Second, Defendants argue that the phrase "after the instrument is issued" indicates that verifying the adequacy of the funds is a separate step that occurs, of course, after the instrument is created.

The limitation does not tell a person of ordinary skill in the art to verify the adequacy of the funds. Rather, it tells the person skilled in the art that an instrument is created without knowing whether there are adequate funds in the account. Thus, the phrase limits the step of creating the instrument by imposing a time sequence restriction. Furthermore, Defendants' argument that nothing indicates that the disputed phrase limits the creating step is incorrect. The words "after the instrument is issued" refers back to the "creating step" and the choice of the gerund "being" as opposed to the verb "is" suggests that the verification of the adequacy of funds is not a separate method step. The Court adopts Plaintiff's construction.

**L. "one or more pieces of payment information including an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number"**

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "an originator party creating an instrument for transferring funds to a recipient party, the instrument information comprising (i) a variable authentication number (VAN), and (ii) *one or more pieces of payment information including an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial* | One or more pieces of the following payment information: an amount, information for identifying the recipient party or the originator party, a date, and a check control or serial number. If the Court determines that "payment information" should be construed, Stambler proposes "information relevant to a payment." | Data representing one or more of the following, which is included on an instrument: an amount, information for identifying the recipient party or the originator party, a date, a check control number or a serial number. |

| | | |
|---|---|---|
| *number*;" | | |

This disputed phrase appears in claim 35 of the '148 patent. The parties dispute whether the payment information is included on an instrument. The parties appear to agree that payment information is a category of information with the enumerated items as members of that category.

Plaintiff preliminarily argues that "payment information" requires no construction. Thereafter, Plaintiff argues that requiring the payment information to be included on an instrument imports unnecessary limitations and is, in any event, ambiguous. According to Plaintiff, it is not clear whether "an instrument" refers to the instrument recited in the claim or to any generic instrument. Defendants' sole argument is that the instrument must include the payment information in order to successfully transfer funds.

Defendants' proposal lacks meaningful support. The Court construes this limitation as proposed by Plaintiff.

## M. "associated with"

| Term | Plaintiff's Definition | Defendants' Definition |
|---|---|---|
| "a payer obtaining a document containing document information, the document information being *associated with* a debt incurred by the payer or for goods or for services to be paid for or purchased by the payer" | Identified with or having a connection to. | Plain meaning; alternatively, identified with or pertaining to. |

This term appears in claim 28 of the '148 patent and claims 7 and 41 of the '302 patent. The parties dispute whether "associated with" can "have some connection to" or can "pertain to."

Plaintiff argues that its proposal is consistent with "customary definitions" as found in dictionaries. According to Plaintiff, "pertain" is defined as "to belong as an adjunct, part, holding, or quality," which is narrower than "associated with." Plaintiff explains that "associated

with" is used to describe the relationships between a party and account or credential information, and between a VAN and a transaction.  A VAN has a connection to a transaction, according to Plaintiff, and does not belong as an adjunct.  Defendants argue that "having some connection to" is too broad.

Although some portions of the specification support Defendants' argument, the claim languages is broadly written to embrace document information "associated with" the debt.  There may be document information that "has a connection to" a debt but does not necessarily "pertain to" a debt.  For example, the debtor's account number pertains to the debtor, but has only a connection to the debt.  Plaintiff's proposal is more consistent with the language of the claim, and the Court adopts it.

## V.    Conclusion

The court adopts the constructions set forth in this opinion for the disputed terms of the '302 and '148 patents.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

SIGNED this 9th day of April, 2010.

CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE